1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ASSOCIATION OF FLIGHT
ATTENDANTS – CWA, AFL-CIO,

       Plaintiff,

       v.

ALASKA AIRLINES, INC.,

       Defendant.

CASE NO.  C05-0836RSM

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

This matter comes before the Court on the parties' related motions for summary judgment.  (Dkts. #10 and #12).  Defendant argues that this Court lacks jurisdiction to vacate the Award of the Alaska Airlines Flight Attendants' System Board of Adjustment at issue in this case, which found that defendant had no just cause in terminating one of its former employees, but refused to order reinstatement of that employee to his former position.  Specifically, defendant asserts that the Railroad Labor Act ("RLA") limits the Court's review of an Award to "minor" disputes, and only then on three enumerated grounds.  Those grounds include failure by the Board to comply with the procedural requirements of the RLA, failure by the Board to conform or confine its Award to matters within the scope of the Board's jurisdiction, and the Board's fraud or corruption in making an Award.  45 U.S.C. § 153 First(p) and (q).  Defendant argues that because plaintiff's claim meets none of those grounds, the case must be dismissed.

Plaintiff argues that the Arbitrator's Award did not conform or confine itself to matters within the Board's jurisdiction and, therefore, the Court has jurisdiction over its claim, and the

ORDER
PAGE - 1

1   Award should be vacated in part.  Plaintiff further argues that the Arbitrator should have

2   reinstated its member to his former position, and asks the Court to Order such relief.

3       For the reasons set forth below, the Court disagrees with plaintiff, GRANTS defendant's

4   motion for summary judgment, and DENIES plaintiff's motion for summary judgment.

5                                        **II.  DISCUSSION**.

6       **A.  Background**

7       This matter arises from a dispute between plaintiff, Association of Flight Attendants –

8   CWA, AFL-CIO, and defendant, Alaska Airlines, Inc., over the termination of one of

9   defendant's former flight attendants.  Plaintiff is the exclusive bargaining representative for the

10   flights attendants employed by defendant, and the parties are subject to a collective bargaining

11   agreement ("CBA").

12       For many years, defendant has offered health benefits to eligible same sex domestic

13   partners of its employees.  To qualify for such benefits, an employee must meet certain criteria

14   demonstrating that he or she is in a committed, spouse-like relationship.  One of the criteria is

15   that the employee and his or her partner must share a common primary residence.  In the event

16   that this relationship is dissolved, the employee is required to notify defendant's benefits

17   department within 31 days of the date of the dissolution, or that employee will be subject to

18   disciplinary action for making false statements.

19       On June 10, 2001, Mr. McGinty, a former flight attendant for defendant, executed a

20   Declaration of Domestic Partnership, stating that Mr. Hill was his domestic partner.  Mr. Hill

21   began receiving health benefits from defendant.  On December 31, 2002, Mr. McGinty informed

22   defendant that Mr. Hill was no longer his partner.  Defendant apparently continued to provide

23   medical benefits until the end of January 2003 at Mr. McGinty's request.

24       In July of 2003, Mr. Hill contacted defendant's employee relations office, and informed a

25   company representative that he had received benefits to which he was not entitled.  Specifically,

26

ORDER
PAGE - 2

1  he told the representative that his partnership with Mr. McGinty had ended in April 2002, not

2  December 2002.  Mr. Hill also provided defendant with some documents in support of his

3  assertion that he had moved out of the primary residence in April 2002.

4  Based on Mr. Hill's information, defendant terminated Mr. McGinty.  Plaintiff filed a

5  grievance on Mr. McGinty's behalf, challenging his termination on the basis that defendant

6  lacked "just cause" to terminate his employment.  Defendant denied the grievance, and plaintiff

7  appealed to the Alaska Flight Attendant System Board.

8  The Board held a four-day hearing, split into two day sessions, in January and April of

9  2004.  During the first session, held on January 15 and 16, Mr. Hill reiterated his previous

10  assertion that his domestic partnership with Mr. McGinty ended in April of 2002.  The second

11  two days of the hearing were held April 1 and 2.  On those days, Mr. Hill completely recanted

12  his prior testimony, stating that he lived with Mr. McGinty until the end of 2002.

13  On August 17, 2004, the Arbitrator issued a Decision and Award.  The Arbitrator first

14  determined that defendant had terminated Mr. McGinty without just cause because the evidence

15  available to it at the time of termination did not establish that Mr. McGinty and Mr. Hill no

16  longer shared a primary residence at the time.  Accordingly, the Arbitrator ordered defendant to

17  remove the letter of termination from Mr. McGinty's personnel file.  The Arbitrator then

18  determined that the proper remedy in this case would be back pay, seniority, and longevity from

19  the date Mr. McGinty was terminated to the Award date.  However, the Arbitrator determined

20  that reinstatement was not appropriate because Mr. McGinty's post-termination conduct was

21  questionable, and the employee-employer relationship had been permanently damaged.  Because

22  Mr. McGinty was not to be reinstated, the Arbitrator directed that a letter of voluntary

23  resignation be placed in his personnel file in place of the letter of termination which was ordered

24  to be removed.

25  On January 25, 2005, the Arbitrator issued a Supplemental Award specifying the back

26

ORDER
PAGE - 3

1    pay, vacation, per diem and other benefits payable to Mr. McGinty as a result of his wrongful

2    termination.  The Award also extended the benefits period by several months.  Finally, the

3    Award directed that a letter of voluntary retirement replace a letter of voluntary resignation in

4    his personnel file.

5           On March 7, 2005, the Arbitrator's Award became final and binding on the parties.  This

6    lawsuit followed.  Plaintiff seeks to vacate the Arbitrator's decision not to reinstate Mr.

7    McGinty to his former position with defendant, arguing that the Arbitrator's Award exceeds the

8    scope of the Board's jurisdiction because Mr. McGinty's post-termination conduct was never

9    raised before the Board, and because the Award is not based on the terms of the CBA.

10          **B.  Summary Judgment Standard**

11          Summary judgment is proper where "the pleadings, depositions, answers to

12   interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

13   genuine issue as to any material fact and that the moving party is entitled to judgment as a

14   matter of law."  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247

15   (1986).  The Court must draw all reasonable inferences in favor of the non-moving party.  *See*

16   *F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,*

17   512 U.S. 79 (1994).  The moving party has the burden of demonstrating the absence of a

18   genuine issue of material fact for trial.  *See Anderson*, 477 U.S. at 257.  Mere disagreement, or

19   the bald assertion that a genuine issue of material fact exists, no longer precludes the use of

20   summary judgment.  *See California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics,*

21   *Inc*., 818 F.2d 1466, 1468 (9th Cir. 1987).

22          Genuine factual issues are those for which the evidence is such that "a reasonable jury

23   could return a verdict for the non-moving party."  *Anderson,* 477 U.S. at 248.  Material facts are

24   those which might affect the outcome of the suit under governing law.  *See id.*  In ruling on

25   summary judgment, a court does not weigh evidence to determine the truth of the matter, but

26

ORDER
PAGE - 4

1    "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d

2    547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747).

3            In the instant action, the parties agree that there are no genuine issues of material fact in

4    dispute, and resolution on summary judgment is appropriate.

5            **C.  Railway Labor Act – Major/Minor Disputes**

6            Congress passed the RLA with the intent to promote stability in labor relations, and to

7    avoid interruptions to commerce that had historically plagued the transportation industry.

8    *Detroit and Toledo Shore Line v. United Transportation Union*, 396 U.S. 142, 148 (1969);

9    *International Ass'n of Machinists & Aerospace Workers v. NMB*, 425 F.2d 527, 533 (D.C. Cir.

10    1970).  The Act has been made applicable to the airline industry under 45 U.S.C. § 184.  *Singer*

11    *v. Flying Tiger Line, Inc.*, 652 F.2d 1349, 1355-56 (9th Cir. 1981).

12            All labor disputes that arise between parties of a collective bargaining agreement are

13    either "major" or "minor." *Elgin, Joliet and Eastern Ry. Co. v. Burley*, 325 U.S. 711, 722-24

14    (1945).  Major disputes are those related to the formation and modification of collective

15    bargaining agreements. *Id.* at 723.  Minor disputes relate to interpretation of existing bargaining

16    disputes.  Major disputes are subject to direct judicial review, while minor disputes are subject to

17    final and binding arbitration, with narrow exceptions.

18            In the instant case, the parties appear to agree that the dispute is properly categorized as

19    "minor."

20            **D.  Limitations to Review of Minor Disputes**

21            Courts are required to give deference to an Arbitrator's decision in minor disputes.

22    *Ass'n of W. Pulp & Paper Workers v. Rexam Graphic, Inc.*, 221 F.3d 1085, 1089 (9th Cir.

23    2000).  In addition, the RLA prevents the Court from disturbing the findings and order of the

24    Adjustment Board, and

25                    such order may not be set aside except for failure of the division to comply
                    with the requirements of the Act, for failure of the order to conform, or

26

ORDER
PAGE - 5

1

2

confine itself to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order.

3

4

43 U.S.C. § 153, First(p).  The Ninth Circuit Court of Appeals has recognized that district

courts are confined to these three narrow grounds.  *Edelman v. Western Airlines, Inc.*, 892 F.2d

5

839, 842 (9th Cir. 1998) (explaining that the scope of review of an Adjustment Board's order is

6

among the narrowest known to law); *United Transp. Union v. Union Pac. R.R.*, 116 F.3d 430,

7

432 (9th Cir. 1997).  Indeed, the U.S. Supreme Court has instructed that, for the reviewing

8

court, "[t]he dispositive question is whether the party's objections to the Adjustment Board's

9

decision fall within any of the three limited categories of review provided for in the Railway

10

Labor Act."  *Union P. R. Co. v. Sheehan*, 439 U.S. 89, 93 (U.S. 1978).  Accordingly, an

11

Arbitrator's decision "'may not be retried on the merits in an independent judicial proceeding.'"

12

*Edelman*, 892 F.2d at 842 (citation omitted).

13

Here, plaintiff does not assert that the Arbitrator's Award does not comply with the

14

procedural requirements of the RLA, nor does plaintiff challenge the Award for fraud or

15

corruption of a decision maker on the Board.  Rather, plaintiff argues that the Arbitrator

16

exceeded the scope of his jurisdiction by imposing a remedy that was not based upon, or

17

contemplated in, the existing CBA, and by relying on a finding of post-termination conduct by

18

Mr. McGinty even though the issue was not raised at arbitration.  As further discussed below,

19

the Court finds plaintiff's arguments misguided.

20

### E.  Scope of Arbitrator's Jurisdiction

21

The Supreme Court has made clear that, in making a decision, "an arbitrator is confined

22

to interpretation and application of the collective bargaining agreement; he does not sit to

23

dispense his own brand of industrial justice.  He may of course look for guidance from many

24

sources, yet his award is legitimate only so long as it draws its essence from the collective

25

bargaining agreement."  *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363

26

ORDER
PAGE - 6

1   U.S. 593, 597 (1960); *see also Southern Calif. Gas Co. v. Utility Workers Union of America*,

2   265 F.3d 787, 792-93 (9th Cir. 2001); *Van Waters & Rogers, Inc. v. International Brotherhood*

3   *of Teamsters, Local Union 70*, 913 F.2d 736, 739 (9th Cir. 1990).  However, a court may not

4   overturn the Arbitrator's decision, even if the court is convinced he committed serious error, if

5   that Arbitrator "even arguably constru[ed] or appl[ied] the contract and act[ed] within the scope

6   of his authority." *Southern Calif. Gas Co.*, 265 F.3d at 792 (quoting *Eastern Associated Coal*

7   *Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000)).  Furthermore, there is no question that in the

8   Ninth Circuit this Court may only overrule an Arbitrator's judgment when he has ignored the

9   CBA's plain language.  *Southern Calif. Gas Co.*, 265 F.3d at 792; *Teamsters Local Union 58 v.*

10   *BOC Gases*, 249 F.3d 1089, 1093 (9th Cir. 2001).

11          In the instant case, plaintiff argues that the Arbitrator did not have the authority under

12   the CBA to force Mr. McGinty to voluntarily retire from his job.  In addition, plaintiff argues

13   that reinstatement is mandatory in order to make Mr. McGinty "whole."  Finally, plaintiff argues

14   that the Arbitrator exceeded his scope of authority by considering Mr. McGinty's post-

15   termination conduct, even though it was not an issue in the arbitration.  The Court is not

16   persuaded.

17          Confronted with nearly identical arguments, the Ninth Circuit Court of Appeals rejected

18   plaintiff's positions in *Rexam Graphic*, *supra*.  The Court of Appeals explained that when the

19   parties ask the Arbitration Board to determine whether there is just cause for a termination of

20   employment, and what shall be the remedy, an Arbitrator may consider post-termination conduct

21   in fashioning a remedy, but not in determining whether the employer had just cause for the

22   termination in the first place.  *Rexam Graphic*, 221 F.3d at 1089.  The Court explained that this

23   approach "allows arbitrators to craft common-sense remedies responsive to all of the

24   circumstances surrounding the case presented to them, but rightly separates consideration of

25   post-termination factors from the initial just-cause determination."  *Id.* at 1090.

26

ORDER
PAGE - 7

1        That is exactly what happened in Mr. McGinty's case.  The parties asked the Arbitrator

2    whether there was just cause for the termination of Mr. McGinty and what should be the proper

3    remedy.  The Arbitrator considered the two distinct questions, but did not consider Mr.

4    McGinty's post-termination conduct as an independent basis for termination.  Rather, he

5    considered the conduct only in fashioning a remedy.  This is evidenced by the fact that the

6    Arbitrator determined that there had been no just cause in terminating Mr. McGinty, and

7    awarded him back pay and benefits.  The Arbitrator then noted that the employee-employer

8    relationship between Mr. McGinty and defendant had deteriorated to the point where the

9    relationship no longer appeared viable.  Just as the Court of Appeals determined in *Rexam*

10   *Graphic*, "denying reinstatement was not unreasonable given the facts before the arbitrator and

11   the deference we owe to arbitrator's judgments." *Id.*; *see United Paperworkers Int'l Union v.*

12   *Misco, Inc.*, 484 U.S. 29, 37-38 (1987) (holding that an arbitrator has broad authority in

13   fashioning a remedy); *Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison*

14   *Indus.*, 84 F.3d 1186, 1190 (9th Cir. 1996) (holding that an arbitrator is entitled to great

15   deference in interpreting the CBA).

16       Plaintiff attempts to distinguish the Court's decision in *Rexam Graphic*, arguing that in

17   that case the arbitrator had expressly found that the employee's post-termination conduct had

18   caused the employee-employer relationship to deteriorate, and that in the instant case, the

19   arbitrator made no such finding.  Indeed, the Arbitrator in the instant matter explained that the

20   Board could not "get past the uncertainty, as to what, *if anything*, occurred between Hill and

21   McGinty following the January 2004 hearings and the April 2004 hearings." (Dkt. #11, Ex. F at

22   15) (emphasis added).  However, plaintiff's focus on the uncertainty of Mr. McGinty's post-

23   termination conduct is misplaced.  In *Rexam Graphic* the Court of Appeals' focus was on the

24   erosion of the employer-employee relationship, which made a denial of reinstatement reasonable,

25   not whether there was any actual post-termination misconduct.  *See Rexam Graphic*, 221 F.3d

26

ORDER
PAGE - 8

1    at 1090.  Although there was a finding that the employee had actually been untruthful in the

2    arbitration hearing, it was not the conduct but the result of the conduct upon which the Court

3    relied.  Moreover, the Court noted that industrial common law supports the consideration of

4    post-termination conduct in deciding an appropriate remedy.  *Id.*

5           Mr. McGinty's situation in analogous.  It is not so much that the Arbitrator was

6    uncertain about whether Mr. McGinty had lied or produced false records after his termination,

7    that this Court must examine.  Instead, this Court must determine whether it was reasonable for

8    the Arbitrator to determine that the uncertainty surrounding Mr. McGinty's post-termination

9    conduct had eroded the employee-employer relationship to the point that it was no longer viable.

10   Given the fact that Mr. Hill's testimony changed drastically between the first days of arbitration

11   and the latter days of arbitration, the fact that evidence was produced during arbitration

12   implicating Mr. McGinty's involvement with Mr. Hill's recantation, and given the wide latitude

13   in which Arbitrator's have to fashion awards, the Court finds that the Arbitrator's decision in

14   this case was reasonable.

15          Finally, the Court turns to plaintiff's argument that the Arbitrator's award failed to "draw

16   its essence" from the CBA.  Again, the Court notes that the Ninth Circuit Court of Appeals has

17   addressed this argument, and has rejected it.  In *Rexam Graphic* the Court explained

18          [a]lthough well-established labor law provides that an arbitration award must
            draw its essence from the CBA, that means only that the arbitrator's
19          determination must be a 'plausible interpretation' of the CBA.  The
            arbitrator's decision need not be the only possible interpretation.  The
20          Supreme Court has held that, when a CBA can be read in a manner consistent
            with the arbitrator's interpretation, it is not the job of the courts to second-
21          guess arbitrators.

22   *Rexam Graphic*, 221 F.3d at 1090-1091.

23          In the instant case, nothing in the CBA requires an employee who was terminated

24   without just cause to be reinstated upon such finding.  The parties could have included a clause

25   limiting an arbitrator's remedial authority if the parties had desired at the time of contracting.

26

ORDER
PAGE - 9

1    However, "[i]n the absence of any limitation, the Union cannot now argue that the arbitrator's

2    award failed to draw its essence from the CBA." *Id.* at 1091.

3         For all of these reasons the Court finds that the Arbitrator issued a decision that may not

4    be vacated in whole or in part. "Simply because the result failed to meet [Mr. McGinty's]

5    expectations does not mean that the arbitrator exceeded the scope of the issues presented or

6    failed to base [his] conclusion on the essence of the CBA." *Id.*  Accordingly, this Court lacks

7    jurisdiction to grant the relief plaintiff seeks.

## III. CONCLUSION

9         Having reviewed the parties' motions for summary judgment, the response and reply

10   briefs, the declaration and exhibits in support of the motions, and the remainder of the record,

11   the Court hereby ORDERS:

12        (1)  Plaintiff's Motion for Summary Judgment (Dkt. #12) is DENIED.

13        (2)  Defendant's Motion for Summary Judgment (Dkt. #10) is GRANTED, and this case

14   is DISMISSED with prejudice.

15        (3)  The Clerk shall forward a copy of this Order to all counsel of record.

16        DATED this 26th day of October, 2005.

17

18

19                                    RICARDO S. MARTINEZ
                                      UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

ORDER
PAGE - 10